UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR GUTTMANN,<br><br>   Plaintiff,<br><br>   v.<br><br>LA TAPATIA TORTILLERIA, INC.,<br><br>   Defendant. | Case No. 15-cv-02042-SI<br><br>**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 16 |

Defendant La Tapatia Tortilleria, Inc. moved to dismiss this putative class action on the basis that plaintiff Victor Guttman lacked standing to assert the claims alleged in the complaint. Dkt. 16 at 6-11. The Court issued an order examining this issue. Dkt. 32. The parties thereafter engaged in limited discovery and filed supplemental briefs addressing Guttman's ability to advance the present lawsuit. Dkt. 37, 39.

The Court determines this motion is appropriate for resolution without oral argument and **VACATES** the upcoming November 20, 2015 hearing pursuant to Civil Local Rule 7-1(b). For the reasons set forth below, the Court hereby **GRANTS** in part defendant's motion to dismiss, with prejudice.

**BACKGROUND**

The Court issued a prior order in this case detailing the nature of Guttman's complaint. *See* Dkt. 32 at 1-2. In short, Guttman seeks to eradicate artificial trans-fat from food and, to that end, has sued several manufacturers over artificial trans-fat and labeling. *See Chacanaca, Guttmann v. Quaker Oats Co.*, 752 F. Supp. 2d 1111 (N.D. Cal. 2010); *Peviani, Guttmann v. Hostess Brands, Inc.*, 750 F. Supp. 2d 1111, 1114 (C.D. Cal. 2010); *Guttmann v. Ole Mexican*

*Foods, Inc.*, No. C 14-04845 (N.D. Cal.); *Guttmann v. Nissin Foods (U.S.A.) Co., Inc.*, No. C 15-00567 WHA, 2015 WL 4881073 (N.D. Cal. Aug. 14, 2015).

The present defendant is a manufacturer of tortilla products whose labels and/or packaging allegedly contain the statement "0g Trans Fat." Dkt. 1 ¶ 76. Guttman asserts that this product label is false and misleading because La Tapatia's products contain partially hydrogenated oils ("PHO"), a form of trans-fat. Dkt. 1 ¶ 14. Guttman claims that he relied on La Tapatia's false and misleading product label when he purchased a package of La Tapatia's PHO-containing tortilla product once a month "over the past several years." Dkt. 1 ¶¶ 10, 66, 69.

Guttman's complaint alleges causes of action for: (1) violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 *et seq.*; (2) violation of California's False Advertising Law ("FAL"), California Business and Professions Code § 17500 *et seq.*; and (3) violation of California's Consumers Legal Remedies Act ("CLRA"), California Civil Code § 1750 *et seq.*

For the reasons explained below, the Court concludes that Guttman cannot plausibly plead actual reliance under California's UCL, FAL, or CLRA during the alleged period he purchased the tortilla products because he was amply aware, given his litigation history: (1) that products labeled as "0g Trans Fat" may in fact contain small amounts of trans-fat; (2) that FDA regulations do not require trans-fat content to be declared in the nutrition-facts panel on a product label[1]; (3) that PHO is a form of artificial trans-fat; and (4) that consumption of artificial trans-fat may pose health risks.

Guttman's complaint additionally alleges causes of action for breach of express warranty and breach of implied warranty of merchantability. For the reasons explained below, the Court concludes that Guttman has pled sufficient facts as to these causes of action to establish standing at this stage of litigation.

---

[1] However, "[i]f the serving contains less than 0.5 gram[s of trans-fat], the content, when declared, shall be expressed as zero." 21 C.F.R. 101.9(c)(2)(ii).

## LEGAL STANDARDS

### 1. Rule 12(b)(1)

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). If a plaintiff lacks standing under Article III of the U.S. Constitution, then the court lacks subject matter jurisdiction, and the case must be dismissed. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101-02 (1998).

### 2. Rule 12(b)(6) and Rule 8(a)(2)

A defendant may also move to dismiss an action pursuant to Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6) tests the legal sufficiency of the claim stated in the complaint. *Ileto v. Glock Inc.*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "To survive a motion to dismiss . . . under Rule 12(b)(6), a complaint generally must satisfy only the minimal notice pleading requirements of Rule 8(a)(2). Rule 8(a)(2) requires only that the complaint include 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003) (quoting Fed. R. Civ. P. 8(a)(2)).

The Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a court need not accept as true allegations contradicted by judicially noticeable facts. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). The Court may also look beyond the plaintiff's complaint to matters of public record without converting the Rule 12(b)(6) motion into one for summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995).

### 3. Rule 9(b)

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of

3

Federal Rule of Civil Procedure 9(b). This rule requires a plaintiff alleging fraud to "state with particularity the circumstances constituting fraud."

#### 4. **Leave to Amend**

After a complaint is dismissed, leave to amend is ordinarily granted. See Fed.R.Civ.P. 15. But leave to amend need not be granted if the amended complaint would not withstand a motion to dismiss. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998). While "there is a policy that favors allowing parties to amend their pleadings . . . a district court may properly deny such a motion if it would be futile to do so." *Partington v. Bugliosi*, 56 F.3d 1147, 1162 (9th Cir. 1995).

## DISCUSSION

Defendant seeks dismissal of plaintiff's complaint on standing grounds, arguing that plaintiff is not an injured or deceived individual. Dkt. 39 at 1.

### 1. **Article III Standing**

"To satisfy Article III standing, a plaintiff must show (1) he has suffered an 'injury in fact' that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Braunstein v. Arizona Dep't of Transp.*, 683 F.3d 1177, 1184 (9th Cir. 2012) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000)).

### 2. **UCL, FAL, and CLRA Standing**

In addition to Article III's requirements, the UCL, FAL, and CLRA all require a plaintiff to demonstrate standing. *See generally Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326-330 (Cal. 2011) (discussing standing under the FAL, CLRA, and UCL); *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (Cal. 2009) (discussing standing under the CLRA).

**A.     FAL and CLRA Standing**

Standing under the FAL or CLRA requires a plaintiff to allege that he relied on the defendant's purported misrepresentation and suffered economic injury as a result. *Kwikset*, 51 Cal. 4th at 326 ("Proposition 64 requires that a plaintiff's economic injury come 'as a result of' . . . a violation of the false advertising law . . . . The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation. . . . This commonsense reading of the language mirrors how we have interpreted the same language in . . . the Consumers Legal Remedies Act." (citations omitted)); *see also* Cal. Bus. & Prof. Code § 17535 (directing that applicable government representative must have suffered injury in fact and have lost money or property "as a result of a violation of this chapter" and clarifying that "[a]ny person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of this section . . ."); Cal. Civ. Code § 1780(a) (granting standing to consumers who have suffered damage "as a result of" a violation, and imposing a requirement that a violation must "caus[e] or result[ ] in some sort of damage").

**B.     UCL Standing (Fraudulent, Unlawful, Unfair Prongs)**

The UCL defines unfair competition as "any unlawful, unfair or fraudulent business act or practice . . . ." Cal. Bus. & Prof. Code § 17200. The enactment of Proposition 64 in California limited private standing to any person who had suffered injury in fact and had lost money or property "as a result of" unfair competition. *See generally Kwikset*, 51 Cal. 4th at 320-21 (citing Cal. Bus. & Prof. Code § 17204).

To establish standing under the UCL's fraud prong, a plaintiff must demonstrate that he relied upon the allegedly fraudulent misrepresentation. *In re Tobacco II Cases*, 46 Cal.4th 298, 326 (Cal. 2009) ("[T]here is no doubt that reliance is the causal mechanism of fraud . . . [B]ecause it is clear that the overriding purpose of Proposition 64 was to impose limits on private enforcement actions under the UCL, we must construe the phrase 'as a result of' in light of this intention to limit such actions." (citations omitted)).

California courts have also extended this actual reliance requirement to claims under the

unlawful prong of the UCL that are based, as here, on allegations of misrepresentation and deception. *See Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1363 (Cal. Ct. App. 2010) ("Construing the phrase 'as a result of' in Business and Professions Code section 17204 in light of Proposition 64's intention to limit private enforcement actions under the UCL, we conclude the reasoning of *Tobacco II* applies equally to the 'unlawful' prong of the UCL when, as here, the predicate unlawfulness is misrepresentation and deception."). *See* Dkt. 1 at ¶ 120 (alleging that defendant "made and distributed, in interstate commerce in this District, products that make false or misleading statements of fact regarding its content").

Finally, courts have construed an actual reliance standing requirement to claims under the unfair prong of the UCL if those claims sound in fraud. *See In re Tobacco II Cases*, 46 Cal. 4th at 326 n.17 ("We emphasize that our discussion of causation in this case is limited to such cases where, as here, a UCL action is based on a fraud theory *involving false advertising and misrepresentations to consumers*. . . . There are doubtless many types of unfair business practices in which the concept of reliance, as discussed here, has no application." (emphasis added) (internal citations omitted)); *see also Kane v. Chobani, Inc.*, 973 F. Supp. 2d 1120, 1129 (N.D. Cal. 2014) ("[T]he actual reliance requirement also applies to claims under the UCL's unfair prong to the extent such claims are based on fraudulent conduct." (citations omitted)). Again, this is the case with the present matter. *See* Dkt. 1 at ¶¶ 146, 147, 148 (alleging that defendant "leveraged its deception" and employed "deceptive advertising" that was "false and misleading" to "induce [p]laintiff and members of the [c]lass to purchase products that were of lesser value and quality than advertised.")

### C. Discussion

Here, Guttman cannot plausibly show that he actually relied on La Tapatia's alleged misrepresentations that their tortilla products contained "0g Trans Fat" when he purchased the products listing PHO as an ingredient. In his deposition, ordered for the limited purpose of examining standing in this case, Guttman admitted that, as of 2010, he was aware of the following facts: (1) products could be labeled "0g Trans Fat" if they contained less than 0.5 grams of trans-

fat per serving (Dkt. 39-3 at 13-14, 17, 25, 41); (2) PHO is a form of artificial trans-fat (*id.* at 14-15, 21-22, 24, 42-43); (3) he could check the ingredients labels on food products to see if they contained PHO (*id.* at 28-29); (4) trans-fat was linked to health risks (*id.* at 13, 26, 28, 41-42); (5) he was aware of the dangers of consuming PHO as a trans-fat (*id*. at 26). Further, Guttmann admitted that he actually did inspect some product labels to discern whether they contained trans-fats. *Id.* at 28-29.

Given Guttman's extensive knowledge of trans-fats, the dangers of PHO, the FDA's labeling requirements, and the labeling practices of manufacturers, the Court concludes that Guttman cannot plausibly claim that he relied on La Tapatia's "0g Trans Fat" label when he purchased the tortillas. This is not to say that *no* representative plaintiff can allege that he relied on this allegedly misrepresentative label pursuant to the FAL, CLRA and/or UCL. This is merely to say that *Guttman* cannot plausibly claim this element of standing required to pursue these California causes of action.

Because Guttman cannot plausibly show that he relied on La Tapatia's alleged misrepresentations, he cannot allege legally sufficient facts upon which this Court can grant relief. Accordingly, La Tapatia's motion to dismiss on these causes of action pursuant to Rule 12(b)(6) is granted with prejudice given the futility of an amendment to the pleadings in this case. *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (reasoning that lack of statutory standing requires dismissal for failure to state a claim).

**3.      Breach of Express Warranty and Breach of Implied Warranty of Merchantability**

Unlike claims under the UCL, FAL, or CLRA, there is no additional statutory standing requirement for breach of express warranty and breach of implied warranty of merchantability claims.[2] At the motion to dismiss stage, Article III standing is adequately demonstrated through

---

[2] Causes of action for breach of express warranty and breach of implied warranty of merchantability do not appear to require proof of reliance as a separate element. *Weinstat v. Dentsply Int'l, Inc*., 180 Cal. App. 4th 1213, 1227 (2010). ("The lower court ruling rests on the incorrect legal assumption that a breach of express warranty claim requires proof of prior reliance. While the tort of fraud turns on inducement, as we explain, breach of express warranty arises in

7

allegations of "specific facts plausibly explaining" why the standing requirements are met. *Barnum Timber Co. v. Envtl. Prot. Agency*, 633 F.3d 894, 899 (9th Cir. 2011). The Court is mindful that, when determining Article III standing, it must "accept as true all material allegations of the complaint" and "construe the complaint in favor of the complaining party." *Davis v. Guam*, 785 F.3d 1311, 1314 (9th Cir. 2015) (citations omitted).

Notwithstanding the Court's skepticism of the ultimate legal viability of Guttman's remaining claims, the Court concludes that he has alleged facts to show Article III standing: he has alleged an injury fairly traceable to his alleged purchase of defendant's products and a favorable decision of this Court would redress such an injury. As the Court limited its discovery order to eliciting facts on the issue of standing, it will refrain from drawing further legal conclusions at this stage.

## CONCLUSION

For the foregoing reasons the Court hereby **GRANTS** defendant's motion to dismiss plaintiff's complaint pursuant to claims brought under the UCL, FAL, and CLRA with prejudice.

**IT IS SO ORDERED**.

Dated:  November 18, 2015

SUSAN ILLSTON
United States District Judge

---

the context of contract formation in which reliance plays no role."); *Holmes Packaging Mach. Corp. v. Gingham*, 252 Cal. App. 2d 862, 873 (1967) (implied warranties of merchantability and fitness for purpose do not arise from any agreement in fact of parties but are created by operation of law where requisite elements for creation of warranties exist).